Platzer, Swergold, Levine,
  Goldberg, Katz & Jaslow, LLP
*Counsel for JM Holding Group, LLC, and*
*Proposed Counsel for J. Mendel Inc.*
475 Park Avenue South, 18th Floor
New York, New York 10016
(212) 593-3000
Clifford A. Katz

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| JM HOLDING GROUP, LLC *et al.*, | Case No. 17-45647 (NHL) |
| Debtors. | (Jointly Administered) |

--------------------------------------------------------x

## DEBTOR'S MOTION FOR THE ENTRY OF: (I) AN ORDER (A) ESTABLISHING BIDDING PROCEDURES FOR THE SALE OF ASSETS, (B) AUTHORIZING THE DEBTOR TO SELECT A STALKING HORSE BIDDER, (C) SCHEDULING AN AUCTION AND SALE HEARING, AND (D) APPROVING THE FORM AND MANNER OF NOTICE THEREOF; AND (II) AN ORDER AUTHORIZING AND APPROVING (A) DEBTOR'S ENTRY INTO A CERTAIN ASSET PURCHASE AGREEMENT, (B) THE SALE OF ASSETS FREE AND CLEAR OF LIENS AND OTHER INTERESTS, AND (C) ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND LEASES

J. Mendel Inc. ("**J. Mendel**" or the "**Debtor**"), as and for its motion (the "**Motion**"), pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Local Rules of the United States Bankruptcy Court for the Eastern District of New York (the "**Local Bankruptcy Rules**"), for the entry of the Bidding Procedures Order and Sale Order (each term is defined herein), respectfully sets forth and represents as follows:

## JURISDICTION

1.       The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.

This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue is proper in this Court pursuant

to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are pursuant to

sections 105(a), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004 and 6006 and

Local Bankruptcy Rules 2002-1, 6004-1 and 6006-1.

## BACKGROUND

2.       On June 22, 2018 (the "**Petition Date**"), J. Mendel commenced a voluntary case

under Chapter 11 of the Bankruptcy Code in this Court.

3.       Prior thereto, on October 27, 2017, J. Mendel's parent company, JM Holding

Group, LLC ("**JM Holding**"), commenced a voluntary case under Chapter 11 of the Bankruptcy

Code in this Court.

4.       By Order dated July 4, 2018, the Court authorized and directed that J. Mendel's

case and JM Holding's case be jointly administered.

5.       The Debtor is operating its business and managing its property as debtor and debtor

in possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.  To date, no trustee,

examiner or creditors' committee has been appointed.

6.       J. Mendel designs and manufactures apparel for women, and offers dresses,

anniversary gowns, ready-to-wear apparel, knitwear, cuffs, hunter boots, and scarves, as well as

provides handbags that are made from fur, luxury leathers, and alligators.

7.       JM Holding is an investment company and is the sole owner of J. Mendel.

8.       J. Mendel's assets consist primarily of cash, inventory, its interest in factored

accounts receivables, and intellectual property which secure J. Mendel's obligations as a borrower,

to repay indebtedness as of June 22, 2018 in the amount of approximately $4,617,297.28 to Rosenthal & Rosenthal, Inc. ("**Rosenthal**").

9.    J. Mendel also executed a promissory note in the original principal amount of $7,000,000 in favor of Gores Clothing Holdings, LLC ("**Gores**"), in conjunction with a sale of the equity of J. Mendel from Gores to JM Holding, which as stated above, is now the sole shareholder of J. Mendel.  Upon information and belief, Gores asserts it is owed the sum of approximately $5,154,000.00 from J. Mendel.  Gores asserts J. Mendel's debt to Gores is guaranteed by JM Holding.

10.    On June 25, 2018, the Debtor filed its Amended Motion for Entry and Approval of Interim and Final Orders: (A) Authorizing Use of Cash Collateral and Affording Adequate Protection; (B) Modifying Automatic Stay; and (C) Scheduling Final Hearing, Pursuant to Sections 105, 362, 363 and 507 of title 11 of the United States Code, Rules 2002 and 4001 of the Federal Rules of Bankruptcy Procedure and Rule 4001-5 of the Local Rules for the United States Bankruptcy Court for the Eastern District of New York (the "**Cash Collateral Motion**") [Docket No. 16].

11.    Pursuant to the Cash Collateral Motion, on July 2, 2018 and July 14, 2018, this Court entered, respectively, an *Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; and (III) Scheduling a Final Hearing* [Docket No. 28], and a *Final Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; and (II) Modifying Automatic Stay* [Docket No. 58] (collectively, the "**Cash Collateral Orders**").

12.     J. Mendel's use of Cash Collateral was conditioned upon filing a motion seeking to sell substantially all of the Debtor's assets.  In furtherance thereof, the Debtor has filed the instant motion seeking to sell their assets at auction, and seeking entry of a bidding procedures order.

13.     The Debtor will solicit bids and may, in consultation with Rosenthal and Gores, select a stalking horse bidder.  The stalking horse bidder, or if none is selected, the high bidder at the conclusion of the auction will be required to execute a form of Asset Purchase Agreement (the "**Purchase Agreement**") with respect to the acquisition of the Acquired Assets (as defined below) (the "**Proposed Transaction**").  A copy of the form of Purchase Agreement is annexed hereto as **Exhibit "A"**.

14.     After consultation with their management and professionals, the Debtor believes it is in the best interest of the Debtor's estates and their creditors to implement an orderly sale of the business pursuant to section 363 of the Bankruptcy Code.

## **RELIEF REQUESTED**

15.     By this Motion, the Debtor seeks entry of an order, substantially in the form attached hereto as **Exhibit "B"** (the "**Bidding Procedures Order**") and, at the conclusion of the Sale Hearing (as defined below), an order, substantially in the form attached hereto as **Exhibit "C"** (the "**Sale Order**").

16.     The Debtor seeks entry of the Bidding Procedures Order:

   a.     authorizing and approving the bidding procedures (the "**Bidding Procedures**," the form of which is attached hereto as **Exhibit "1"** to the Bidding Procedures Order) in connection with the Sale (as defined herein), and the Bid Protections (as defined below);

   b.     approving procedures for the selection of a stalking horse bidder (the "**Stalking Horse Bidder**") whose bid will serve as the opening bid at the Auction (the "**Stalking Horse Bid**");

4

c.    approving the form and manner of notice of the Sale by auction, the Sale Hearing and related matters, substantially in the form attached as **Exhibit "2"** to Bidding Procedures Order (the "**Sale Notice**");

d.    authorizing and approving procedures for the assumption and assignment of executory contracts and leases (collectively, the "**Assumed Contracts**"), including the notice of the proposed assumption and assignment of the Assumed Contracts in the form attached as **Exhibit "3"** to the Bidding Procedures Order (the "**Assumption and Assignment Notice**"); and

e.    establishing the following dates and deadlines, subject to modification:

i.    **Bid Deadline**: September 21, 2018 at 4:00 p.m. (Eastern Time), as the deadline by which all binding bids must be actually received pursuant to the Bidding Procedures (the "**Bid Deadline**");

ii.    **Stalking Horse Deadline**:  September 14, 2018 at 4:00 p.m. (Eastern Time), as the deadline by which the Debtor may, but is not obligated to, select a Stalking Horse Bid (the "**Stalking Horse Deadline**");

iii.    **Auction**:  September 24, 2018, at 10:00 a.m. (Eastern Time), as the date and time of the auction, if one is needed (the "**Auction**"), which will be held at the office of Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, 475 Park Avenue South, 18th Floor, New York, New York 10016;

iv.    **Sale Objection Deadline**:  September 24, 2018 at 5:00 p.m. (Eastern Time), as the deadline to object to the Sale and/or the assumption and assignment of Assumed Contracts or cure amounts related thereof; and

v.    **Sale Hearing**:  September 25, 2018 at 10:00 a.m. (Eastern Time), as the date and time of the hearing to approve the Sale which will be held before the Honorable Nancy Hershey Lord, United States Bankruptcy Judge at the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800.

17.    The Debtor also seeks entry of the Sale Order following the conclusion of the Sale Hearing:

a.    Approving the Purchase Agreement (or such other agreement as agreed to which respect to the Proposed Transaction with the successful bidder at the Auction), and the sale of the Acquired Assets free and clear of all liens, claims, interests and encumbrances (the "**Sale**"); and

5362653.2

     b.     Authorizing the assumption and assignment of the Assumed Contracts to the Purchaser or such other party that is the successful bidder at the Auction.

### OVERVIEW OF THE PROPOSED TRANSACTION

18.     The principal terms of the Purchase Agreement are summarized in the following chart:[1]

| SUMMARY DESCRIPTION | |
|---|---|
| Parties | <u>Seller</u>:  The Debtor.<br><br><u>Purchaser</u>:  Highest and best bidder at auction. |
| Acquired Assets | Upon the terms and subject to the conditions of the Purchase Agreement, the Debtor shall convey its right, title and interest in, to and under all of the assets, properties and rights of every kind and nature, whether real, personal or mixed, tangible or intangible (including goodwill), wherever located and whether now existing or hereafter acquired (other than the Excluded Assets), which relate to, or are used or held for use in connection with, the Business, including, without limitation, (a) all cash and cash equivalents; (b) all accounts or notes receivable held by the Debtor, and any security, claim, remedy or other right related to any of the foregoing; (c) all inventory, finished goods, raw materials, work in progress, packaging, supplies, parts and other inventories; (d) all Assumed Contracts; (e) all Intellectual Property; and (f) all goodwill and the going concern value of the Business. |
| Payment Amount | • The aggregate consideration for the Acquired Assets at the Closing shall be (i) $_____, (ii) the Cure Payments, plus (iii) assumption of the Assumed Obligations, if any.<br><br>• Rosenthal is deemed to be a Qualified Bidder and shall be permitted to make a credit bid pursuant to Section 363(k) of the Bankruptcy Code to purchase, or have its designee purchase, the Acquired Assets.<br><br>• Any other Qualified Bidder must submit a bid with a cash purchase price of no less than $4 Million, plus the Cure Payments, by the bid deadline and provide a cash deposit equal to 10% of the amount of |

[1] Capitalized terms used but not otherwise defined in the summary chart shall have the meaning ascribed to such terms in the Purchase Agreement.  This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Purchase Agreement, the Purchase Agreement governs in all respects.

5362653.2

| | the bid, and provide assurance of each bidder's financial ability to close, be irrevocable until five (5) business days after the closing of the sale or sales pursuant to an order of the Bankruptcy Court, not be subject to any conditions or contingencies to closing, including without limitation obtaining financing, internal approvals or further due diligence except the closing conditions set forth in the Purchase Agreement. |
|---|---|
| Timing of Payment and Closing Date | Upon the terms and subject to the satisfaction of the conditions contained in the Purchase Agreement, the closing of the transaction contemplated by the Purchase Agreement (the "**Closing**") will take place no later three (3) business days after the date on which the conditions set forth in <u>ARTICLE 7</u> and <u>ARTICLE 8</u> of the Purchase Agreement have been satisfied or waived; or on such other date or place as Purchaser and the Seller may determine (the "**Closing Date**"). The Closing Date shall not be any later than October 5, 2018, unless Rosenthal agrees in writing to a later Closing Date. |
| Conditions | (a) approval by the Bankruptcy Court of the Bidding Procedures annexed as Exhibit "1" to the Bidding Procedures Order hereto;<br>(b) approval by the Bankruptcy Court of the Purchaser's acquisition of the Acquired Assets, free and clear of all Liens, claims or interests other than the Assumed Obligations in the form of a Sale Order reasonably acceptable to the Purchaser. |

## SUMMARY OF "EXTRAORDINARY PROVISIONS" PURSUANT TO GUIDELINES FOR THE CONDUCT OF ASSET SALES UNDER THE LOCAL RULES

19. **No Successor Liability**. The Purchase Agreement provides, and the proposed Sale Order includes certain findings, that the purchaser of the Acquired Assets shall have no successor liability whatsoever with respect to any encumbrances or claims of any nature that may exist against the Debtor.

20. **Relief from Stay under Bankruptcy Rules 6004(h) and 6006(d)**. The proposed Sale Order provides for a waiver of the 14-day stay of the Sale Order arising under Bankruptcy Rules 6004(h) and 6006(d), including the parties' ability to close the sale and assign the Assumed Contracts. A waiver of the stay is necessary to maximize as soon as possible the value that the Debtor may realize from the sale of the Acquired Assets, especially in light of the pace of the

Debtor's liquidation and wind down of operations. Therefore, the Debtor submits there are adequate grounds to waive the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) so the Sale Order is effective immediately.

21.    **Record Retention**. In accordance with the terms of the Purchase Agreement, the Debtor will be given reasonable access to their books and records to enable them to administer their respective bankruptcy cases after the sale.

### PROPOSED NOTICE, BIDDING, STALKING HORSE NOTICE AND AUCTION PROCEDURES

**A.    Notice and Other Procedures**

22.    The Debtor requests approval of the following notice and other procedures:

(a)    Sale Notice: As soon as practicable following Bankruptcy Court approval of the Bid Procedures, the Debtor will serve notice of the Sale Hearing (the "**Sale Notice**") by first class mail, on: (a) counsel for Rosenthal, Otterbourg P.C., 230 Park Avenue, New York, New York 10169, Attn: Steven B. Soll, Esq., ssoll@otterbourg.com; (b) counsel for Gores, Forchelli, Deegan, Terrana, LLP, 333 Earle Ovington Blvd, Suite 1010, Uniondale, New York 11553, Attn: Gerard R. Luckman, Esq., gluckman@forchellilaw.com; (c) the Office of the United States Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014, Attn: Marylou Martin, Esq., marylou.martin@usdoj.gov; (d) all known creditors of the Debtor's, including those creditors holding the twenty (20) largest unsecured claims against the Debtor's estates; (e) any official committee of unsecured creditors appointed in this case; (f) all persons who have filed a request for notice and service of papers in this case; (g) all current landlords of the Debtor and parties to any executory contracts which Purchaser may request be assumed and assigned; (h) entities that are known to the Debtor to have previously

8

expressed an interest in the Assets; (i) all entities known or reasonably believed to have asserted a lien, encumbrance, claim or other interest in any of the Acquired Assets offered for sale; and (j) all affected federal, state and local taxing authorities, including the Internal Revenue Service (collectively, the "**Sale Notice Parties**").  The form of Sale Notice is attached hereto as **Exhibit "2"** to the Bidding Procedures Order.

(b)    Bid Deadline; Date, Tim**e**, and Place of Auction:  The Debtor requests that bidders be required to submit bids (in the form and manner described herein and in the Bid Procedures) and that the Court schedule the deadline to submit bids to be on or before **September 21, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "**Bid Deadline**").

**(c)**    Selection of Stalking Horse Bidder:  The Debtor proposes that on or before **September 14, 2018 at 4:00 p.m. (prevailing Eastern Time)** (the "**Stalking Horse Deadline**") the Debtor, in consultation with Rosenthal and Gores, may, but are not obligated to, select a Stalking Horse Bidder.  If a Stalking Horse Bidder is selected, on or before **September 17, 2018 at 12:00 noon (prevailing Eastern Time)**, the Debtor will file with the Court a Notice of Selection of Stalking Horse Bid (the "**Stalking Horse Notice**"), and thereafter provide notice thereof to all then-known potential bidders.  The Stalking Horse Notice shall include (a) a copy of the Agreement embodying the Stalking Horse Bid, and (b) a summary of the material terms of the Stalking Horse Bid.  Nothing herein shall require the Debtor to select a Stalking Horse Bid. **In addition, the Debtor may in consultation with Rosenthal and Gores provide the selected Stalking Horse Bidder with a breakup fee in an amount of no more than 2% of its bid and expense reimbursement up to the sum of $25,000 (the "Break Up Fee"). To the extent that a Break Up Fee is extended to the Stalking Horse Bidder, the next bid accepted shall be**

**no less than One Hundred and Ten Thousand Dollars over the Stalking Horse Bid. The Debtor will not offer a Break Up Fee to any bidder; (1) who makes a credit bid for the Debtor's assets, (2) who is an Insider of the Debtor, or (3) may be affiliated with an Insider of the Debtor.**

(d)     <u>Date, Time and Place of Auction</u>:  The Debtor proposes that the Bankruptcy Court schedule the Auction, if necessary, to be conducted at the offices of the Debtor counsel, Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, 475 Park Avenue South, 18th Floor, New York, New York, 10016, commencing on **September 24, 2018 at 10:00 a.m. (Eastern Time).**  The Debtor will select the highest or best bid(s) after consultation with Rosenthal and Gores, and the successful bidder(s) (the "**Successful Bidder**") will be required to enter into a definitive agreement(s), which shall be subject to the approval of the Bankruptcy Court at the Sale Hearing.  If there are no Qualified Bids, the Auction shall be cancelled.

(e)     <u>Date, Time, and Place of the Sale Approval Hearing</u>:  The Debtor proposes that the Court schedule the Sale Hearing to be held in the United States Bankruptcy Court for the Eastern District of New York, 271-C Cadman Plaza East, Brooklyn, New York 11201-1800, **on September 25, 2018 at 10:00 a.m. (Eastern Time).**

(f)     <u>Objection Deadline to Sale Order(s)</u>:  The Debtor also request that the Bankruptcy Court require objections to the relief sought in the Sale Order to be in writing, filed, and served so as to be <u>actually</u> <u>received</u> by: (i) counsel to the Debtor, Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, 475 Park Avenue South, 18th Floor, New York, New York 10016,  Attn: Clifford Katz Esq., (ii) the Office of the U.S. Trustee, U.S. Federal Office Building, 201 Varick Street, Suite 1006, New York, New York 10014;

Attn: Marylou Martin, Esq., (iii) counsel to Rosenthal, Otterbourg P.C., 230 Park Avenue,

New York, New York 10169, Attn: Steven B. Soll, Esq.; (iv) counsel for Gores, Forchelli,

Deegan, Terrana, LLP, 333 Earle Ovington Blvd, Suite 1010, Uniondale, New York 11553,

Attn: Gerard R. Luckman, Esq.; and (v) all parties that have filed a Notice of Appearance

(collectively, the "**Objection Notice Parties**"), **by September 24, 2018 at 5:00 p.m.
(Eastern Time)** or as otherwise directed by the Court.

(g)    <u>Information Provided to Interested Parties</u>:  The Debtor has either provided

or will provide to all parties that have either expressed an interest in purchasing the

Acquired Assets or who the Debtor believes may have an interest in purchasing the

Acquired Assets (each an "**Interested Party**" and, collectively, the "**Interested Parties**"),

certain information in connection with the proposed Sale, including, among other things,

the Sale Notice and the proposed Bidding Procedures.  Should any Interested Party desire

additional or further information, such Interested Party will be required to enter into a

confidentiality agreement satisfactory to the Debtor in its business judgment.   Upon

execution of the confidentiality agreement, the Interested Party will be given access to

various financial data and other relevant and confidential information as may be requested

in order to determine its interest in submitting a bid.

(h)    <u>Good Faith Deposit</u>:  Other than Rosenthal, each Qualified Bidder will be

required to submit good faith deposits (each a "**Good Faith Deposit**" and collectively, the

"**Good Faith Deposits**") by wire transfer to Debtor's counsel on or before the Bid

Deadline.  Such Good Faith Deposits shall be equal to ten percent (10%) of the purchase

price set forth in such bid.  Good Faith Deposits of all bidders (except for the Successful

Bidder) shall be held by the Debtor's counsel in a separate non-interest-bearing account

for the Debtor's benefit until five (5) business days following the closing of the Sale.  If a Successful Bidder or the Back-Up Bidder, as applicable, fails to consummate an approved sale because of a breach or failure to perform on the part of such bidder, the Debtor will not have any obligation to return the Good Faith Deposit deposited by such bidder, and such Good Faith Deposit shall irrevocably become property of the Debtor's estate without affecting or reducing any of the Debtor's other rights or claims against such party and the next highest bid received for assets will be deemed to be the Successful Bidder.

(i)      Adequate Assurance:  For any bid submitted in accordance with the Bidding Procedures (as further defined therein, a "**Qualified Bid**") that requires the assumption and assignment of executory contracts (the "**Contracts**") or unexpired leases (the "**Leases**"), the bidder must identify such Contracts and/or Leases to be assumed and assigned and provide adequate assurance of its future performance of such Contracts or Leases along with the Qualified Bid.

(j)      Qualified Bidder:  The Debtor, in consultation with Rosenthal and Gores, shall determine if a particular bid received for the Acquired Assets is a Qualified Bid. Except for Rosenthal, in order to be a Qualified Bidder, the bid submitted must: (i) be of no less than $4 Million; (ii) be accompanied by a Good Faith Deposit, (iii) be irrevocable, (iv) be accompanied by a marked up version of the Purchase Agreement, (v) be authorized by the Qualified Bidder's board of directors or governing body, (vi) provide sufficient financial information with respect to adequate assurance of future performance, (vii) not be subject to any conditions/contingencies, including, without limitation, obtaining financing, internal approvals or further due diligence except the closing conditions set forth in the Purchase Agreement, and (viii) contain an acknowledgement and agreement that

5362653.2

such bidder shall abide by the Debtor's current privacy policy concerning their customer data.

(k)    Backup Bidder:  If for any reason the entity or entities that submit(s) the highest or otherwise best bid(s) fails to consummate the purchase of the Acquired Assets, or any part thereof, the Qualified Bidder with the second highest or best bid shall remain bound by such bid and will automatically be deemed to have submitted the highest or best bid and to the extent the Debtor and Rosenthal and Gores, consent, the Debtor and such bidder are authorized to effect the Sale of the Acquired Assets, or any part thereof, to such bidder(s) as soon as reasonably practicable.  If such failure to consummate the purchase is the result of a breach by the winning bidder, the Debtor's reserve the right to seek all available damages from said bidder.  In order for any bid (including any backup bid) to be a Successful Bid, such bid must provide for a cash payment at closing of (i) not less than $4 Million or (ii) a lesser amount agreed to by Rosenthal in writing in its sole discretion.

## B.    **The Bidding Procedures**

23.    The Debtor intends to implement the Bidding Procedures attached hereto as **Exhibit "1"** to the Bid Procedures Order pursuant to which any person or entity wanting to participate in the Auction must submit a Qualified Bid by the Bid Deadline.

24.    The Debtor's reserve the right to modify such procedures as necessary or as it deems appropriate, in consultation with Rosenthal and Gores, to maximize value for the Debtor's estates and creditors.  The Debtor is also reserving the right, in consultation with Rosenthal and Gores, to select a Stalking Horse Bidder.   The Debtor believes that the Bidding Procedures are appropriate and will maximize the recovery for the Debtor and its estate in connection with the Sale in consultation with Purchaser.

25.    The Debtor further believes that these Bidding Procedures provide an appropriate framework for selling the Acquired Assets in a uniform fashion and will enable the Debtor to review, analyze, and compare all bids received to determine which bid(s) are in the best interests of the Debtor and its estate and creditors.

26.    Notwithstanding any confidentiality agreement that may be contained in any agreement, contract, or other document to which the Debtor is a party, the Debtor is authorized to disclose the contents of such agreement, contract, or document to prospective bidders in connection with the Bidding Procedures and proposed Sale and such disclosure shall not be a breach of any such contract, agreement or document.

## C.    <u>The Auction</u>

27.    In the event that Qualified Bids are received by the Bid Deadline, the Debtor's will commence the Auction on **September 24, 2018 at 10:00 a.m. (Eastern Time)** to sell all or substantially all of the Acquired Assets.  Any bidder who submits a Qualified Bid[2] may participate in the Auction.

28.    At the Auction, bidding will commence with the Stalking Horse Bid, or if none, the then highest Qualified Bid and will continue until the Debtor, in consultation with Rosenthal and Gores, determines that it has received the highest or otherwise best bid(s) for the Acquired Assets. After the Debtor so determines, it will close the Auction, subject, however, to its right to re-open the Auction if necessary.  The Debtor will then determine and announce which sale or combination of sales has been determined to be the highest or otherwise best bid(s) (the "**Successful Bid**"), provided that such bid provides for a cash payment at closing of no less than $4 Million, excluding any Cure Payments that are required in connection with any Assumed Contracts designated by the

---

[2] The Stalking Horse Bid shall be deemed a Qualified Bid.

5362653.2

Successful Bidder, or Rosenthal, in its sole discretion, consents in writing to the Debtor's acceptance of such bid.

## APPLICABLE AUTHORITY

A.    **A Sale of the Debtor's Assets Under**
      **Section 363 of the Bankruptcy Code is Warranted**

29.    Ample authority exists for the approval of the proposed sale of the Debtor's Assets. Section 363 of the Bankruptcy Code, which authorizes a debtor to use or sell assets of the estate other than in the ordinary course of business, free and clear of liens, claims and encumbrances, provides, in relevant part, as follows:

> (b)(1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . .

*See* 11 U.S.C. § 363(b)(1); see also Fed. R. Bankr. P. 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction.").

30.    The decision to sell assets outside the ordinary course of business is based upon the sound business judgment of the debtor. See, e.g., In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992); Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 772 F.2d 1063, 1071 (2d Cir. 1983); In re Adelphia Commc'ns Corp., No. 02-41729 (REG) (Bankr. S.D.N.Y. July 31, 2002). See also Official Comm. of Sub. Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992), appeal dismissed, 3 F.3d 49 (2d Cir. 1993), quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985) ("the business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company,'" which has continued applicability in bankruptcy).

31.    In the circumstances of valid business justification, applicable principles of law attach to a debtor's decision a strong presumption "that in making a business decision[,] the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company." <u>In re Integrated Res., Inc.,</u> 147 B.R. at 656. Once a court is satisfied that there is a sound business justification for the proposed sale, the court must then determine whether (i) the debtor in possession has provided the interested parties with adequate and reasonable notice, (ii) the sale price is fair and reasonable, and (iii) the purchaser is proceeding in good faith. <u>In re Betty Owens Sch.,</u> 1997 U.S. Dist. Lexis 5877 (S.D.N.Y. 1997); accord <u>In re Delaware and Hudson Ry. Co.,</u> 124 B.R. 169, 166 (D. Del. 1991); <u>In re Decora Indus., Inc.,</u> Case No. 00-4459, 2002 WL 32332749 at *3 (Bankr. D. Del. May 20, 2002).

32.    Ample business justification exists in this case to approve the proposed Bidding Procedures and any sale effectuated in accordance therewith.  The Debtor has considered all alternatives, with the assistance of its advisors, and determined that a sale of the Acquired Assets is in the best interests of their estates and creditors.  The current lender is unwilling to continue to fund the Debtor's operations as they currently exist and the Debtor has not located any other viable sources of funding sufficient to replace the current lender to enable it to reorganize its business or continue as a going concern.  Furthermore, the Bidding Procedures proposed herein will ensure that the Debtor receives the maximum value for the Acquired Assets.  In light of the Debtor's constraints for use of cash collateral, the Debtor believes that the Sale must be completed in accordance with the time frame described herein to preserve and maximize the value of the Acquired Assets in order to avoid significant additional decline.

33.    Pursuant to section 363(k) of the Bankruptcy Code, the Debtor confirms that Rosenthal shall be permitted at the Auction to credit bid up to the full amount owed to Rosenthal.

**B.    <u>Sale of Assets Free and Clear of Liens, Claims, and Encumbrances</u>**

34.    In the interest of attracting the best offers, the sale of the Acquired Assets should be free and clear of any and all liens, claims, and encumbrances in accordance with section 363(f) of

the Bankruptcy Code, with any such liens, claims and encumbrances attaching to the proceeds of the

sale to the same extent, validity, order and priority as they currently attach to the Acquired Assets.

The sale proceeds shall be applied at closing to pay the Rosenthal secured claim and any excess

sale proceeds after payment of the Rosenthal claim shall be held by the Debtor subject to further

order of this Court. Pursuant to section 363(f) of the Bankruptcy Code, a debtor in possession may

sell property of the estate "free and clear of any interest in such property of an entity other than

the estate" if any one of the following conditions is satisfied:

- applicable nonbankruptcy law permits sale of such property free and clear of such interest;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

- such interest is in bona fide dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1) – (5).

35.    With respect to any party asserting a lien, claim, or encumbrance against the

Acquired Assets, the Debtor believes that it will be able to satisfy one or more of the conditions

set forth in section 363(f).

**C.    The Successful Purchaser Should be Afforded All Protections
Under Section 363(m) as a Good Faith Purchaser**

36.    Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in

property purchased from the debtor notwithstanding that the sale conducted under section 363(b)

is later reversed or modified on appeal.  Specifically, section 363(m) states that:

> The reversal or modification on appeal of an authorization under [section 363(b)] … does not affect the validity of a sale … to an entity that purchased … such property in good faith, whether or not such entity knew of the

pendency of the appeal, unless such authorization and such sale … were stayed pending appeal.

11 U.S.C. § 363(m).  Section 363(m) "fosters the 'policy of not only affording finality to the judgment of the bankruptcy court, but particularly to give finality to those orders and judgments upon which third parties rely.'" In re Chateaugay Corp., 1993 U.S. Dist. Lexis 6130, at *9 (S.D.N.Y. 1993) (quoting In re Abbotts Dairies of Penn., Inc., 788 F.2d 143 at 147); see also Allstate Ins. Co. v. Hughes, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) ... provides that good faith transfers of property will not be affected by the reversal or modification on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal."); In re Stein & Day, Inc., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith purchasers are protected from the reversal of a sale on appeal unless there is a stay pending appeal").  The selection of the Successful Bidder will be the product of arm's-length, good-faith negotiations in an open and competitive process.  The Debtor intends to request at the Sale Approval Hearing a finding that the Successful Bidder is a good-faith purchaser entitled to the protections of section 363(m) of the Bankruptcy Code.

D.    **The Bidding Procedures are Reasonable and Appropriate**

37.    The Debtor believes that the Bidding Procedures will ensure that the bidding process is fair and reasonable and will yield the maximum value for their estates and creditors.

38.    In addition, the Bidding Procedures set deadlines for conducting an Auction and holding a hearing with respect to the sale proposed herein.  As set forth above, in compliance with the Cash Collateral Orders, the Debtor believes that they must be permitted to conduct the sale process in the manner and on the timetable set forth herein and in the Bidding Procedures.

39.     Accordingly, the Debtor believes that the Bidding Procedures are reasonable and necessary under the circumstances and that the Court should approve the Bidding Procedures, including the dates established thereby for the Sale Hearing.

**E.     Sale of the Assets Does Not Require the Appointment of a
        Consumer Privacy Ombudsman**

40.     Under section 363(b)(1), a debtor may sell or lease its customer list so long as it complies with the debtor's privacy policy. See 11 U.S.C. § 363(b)(1)(A).  If a sale is inconsistent with the debtor's privacy policy, section 332 governs the appointment of a consumer privacy ombudsman. 11 U.S.C. § 332(b)(1).

41.     It is anticipated that the Debtor will be selling its customer lists.  However, the Debtor has ensured that the sale is consistent with the Debtor's current privacy policy by requiring all bidders to agree to abide by such privacy policy to the extent the Acquired Assets include the customer lists.  Therefore, the appointment of a consumer privacy ombudsman is unnecessary.

**F.     The Court Should Also (i) Authorize the Assumption and Assignment of Certain
        Executory Contracts and Unexpired Leases Identified in the Schedules to the
        Purchase Agreement, (ii) Fix a Deadline to Object to the Assumption and
        Assignment of Executory Contracts and Unexpired Leases and (ii) Fix the Cure
        Amounts With Respect Thereto**

42.     Section 365 of the Bankruptcy Code authorizes a debtor to assume and/or assign its executory contracts subject to the approval of the Court:

> (a)  Except as provided in . . . subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

*See* 11 U.S.C. §§ 365(a), (b)(1), (f)(2).  Accordingly, section 365 of the Bankruptcy Code authorizes the assumption and assignment of real property leases, provided that the defaults under such leases are cured and adequate assurance of future performance is provided.

19

43.     Courts routinely approve motions to assume, assume and assign, or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment. See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (noting that section 365 of the Bankruptcy Code "permits the trustee or debtor in possession, subject to the approval of the bankruptcy court, to go through the inventory of executory contracts of the debtor and decide which ones it would be beneficial to adhere to and which ones it would be beneficial to reject."); see also NLRB v. Bildisco and Bildisco, 465 U.S. 513, 523 (1984); City of Covington v. Covington Landing L.P., 71 F.3d 1221, 1226 (6th Cir. 1995); In re Market Square Inn, Inc., 978 F.2d 116, 121 (3d Cir. 1992) (the "resolution of [the] issue of assumption or rejection will be a matter of business judgment by the bankruptcy court"); In re Terrell, 892 F.2d 469, 471 (6th Cir. 1989); Sharon Steel Corp. v. Nat'l Fuel Gas Dist., 872 F.2d 36, 39-40 (3d Cir. 1989); In re Riodizio, Inc., 204 B.R. 417, 424-25 (Bankr. S.D.N.Y. 1997).

44.     Courts generally will not second-guess a debtor's business judgment concerning the assumption or rejection of an executory contract or unexpired lease. See Phar-Mor, Inc. v. Strouss Bldg., 204 B.R. 948, 951-52 (Bankr. N.D. Ohio 1997) ("Whether an executory contract is 'favorable' or 'unfavorable' is left to the sound business judgment of the debtor ... . Courts should generally defer to a debtor's decision whether to reject an executory contract."); Riodizio, 204 B.R. at 424 ("[a] court will ordinarily defer to the business judgment of the debtor's management"). The "business judgment" test is not a strict standard; it merely requires a showing that either assumption or rejection of the executory contract or unexpired lease will benefit the debtor's estate. See Allied Tech., Inc. v. R. R. Bruneman & Sons, Inc. In re Allied Tech.), 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982).

45.     Here, these standards are met.   The proposed assumption and assignment is warranted because, as described above, as it is required by the Purchase Agreement, which (a) embodies the best offer received for substantially all of the Debtor's assets and (b) enables the Debtor to maximize the value of its estate.   It is well settled that the meaning of "adequate assurance of future performance" depends on the facts and circumstances of each case, but that a contract counterparty is not required to receive an absolute guarantee of future performance.  See, e.g., In re Glycogensys, Inc., 352 B.R. 568, 578 (Bankr. D. Mass. 2006) ("[I]t is appropriate to evaluate the financial condition of the assignee and the likelihood that the non-debtor party will receive the benefit of its bargain from the assignee"); Carlisle Homes, Inc. v. Arrari (In re Carlisle Homes, Inc.), 103 B.R. 524, 538 (Bankr. D.N.J. 1989) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent); In re Natco Indus., Inc., 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (same).

46.     In connection with the assumption and assignment of any executory contracts and unexpired leases in accordance with the Purchase Agreement, the Debtor proposes that no later than three (3) Business Days prior to the date of the Auction, the Debtor shall deliver a list of Assumed Contracts and applicable Cure Payments (the "**Cure Schedule**") which the Debtor will promptly file with the Court and serve on all counterparties to the Assumed Contracts.  The Debtor further proposes that any objections to the assumption and assignment of any executory contract or unexpired lease identified on the Cure Schedule, must be in writing, filed with the Court, and be actually received on or before, **September 24, 2018 at 5:00 p.m.** on counsel to the Debtor, Platzer, Swergold, Levine, Goldberg, Katz & Jaslow, LLP, 475 Park Avenue South, 18th Floor, New York, New York 10016,  Attn: Clifford Katz Esq.

21

47.     If no objections are received, then the cure amounts set forth in the Cure Schedule shall be binding upon the non-debtor parties to the unexpired leases or executory contracts for all purposes in this chapter 11 case and will constitute a final determination of total cure amounts required to be paid by the Debtor in connection with the assignment to the winning bidder(s).  In addition, each non-debtor party to such unexpired lease or executory contract shall be forever barred from objecting to the cure information set forth in the Cure Schedule, including, without limitation, the right to assert any additional cure or other amounts with respect to the unexpired leases or executory contracts.

48.     If a timely objection is received and such objection cannot otherwise be resolved by the parties, the Debtor will request that the Court establish a date to hear such objection and, pending such hearing, the Debtor will pay the undisputed portion, if any, of the cure amount as set forth on the Cure Schedule from the sale proceeds.  The pendency of a dispute relating to cure amounts will not prevent or delay the closing on any sale of assets, including the assumption and assignment of executory contracts and unexpired leases necessary to effectuate such closing.

49.     The Debtor requests that any party failing to object to the proposed transactions be deemed to consent to the treatment of its executory contract and/or unexpired lease under section 365 of the Bankruptcy Code and this sale motion. See <u>Hargrave v. Twp. Of Pemberton (In re Tabone, Inc.)</u>, 175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to consent); <u>Pelican Homestead v. Wooten (In re Gabeel)</u>, 61 B.R. 661, 667 (Bankr. W.D. La. 1985) (same).  Moreover, the Debtor requests that each such party be deemed to consent to the assumption and assignment of its executory contract and/or unexpired lease notwithstanding any anti-alienation provision or other restriction on assignment.  *See* 11 U.S.C. §§ 365(c)(1)(A), (e)(2)(A), and (f).

**G.    The Court Should Waive or Reduce the Periods Required
By Rule 6004(h) and 6006 (d) of the Federal Rules of Bankruptcy Procedure**

50.     Pursuant to Bankruptcy Rule 6004(h), unless the court orders otherwise, all orders authorizing the sale of property pursuant to section 363 of the Bankruptcy Code are automatically stayed for fourteen 14 days after entry of the order. *See* Fed. R. Bankr. P. 6004(h).  The purpose of Bankruptcy Rule 6004(h) is to provide sufficient time for an objecting party to appeal before the order is implemented. *See* Advisory Committee Notes to Fed. R. Bankr. P. 6004(h).  Similarly, pursuant to Bankruptcy Rule 6006(d), "[a]n order authorizing the trustee to assign an executory contract or unexpired lease under §365(f) is stayed until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

51.     As described above, the Debtor believes that, absent a prompt sale, the value of their assets will rapidly decline because the Debtor lacks sufficient funding to continue operations.  In addition, the Debtor is required pursuant to the Final Cash Collateral Order to close the sale no later than 10 days after entry of the Sale Order.  Consequently, any order approving the sale should be effective immediately by providing that the fourteen 14-day stay under Bankruptcy Rules 6004(h) and 6006(d).

**NOTICE**

52.     Notice of this Motion has been provided to the Sale Notice Parties.  The Debtor submits that no other or further notice need be provided.

**NO PRIOR REQUEST**

53.     No previous request for the relief sought herein has been made by the Debtor to this or any other court.

**WHEREFORE,** the Debtor respectfully requests entry of the Bidding Procedures Order and the Sale Order granting the relief requested herein and such other and further relief as is just.

Dated: New York, New York
      July 23, 2018

                                      Platzer, Swergold, Levine,
                                      Goldberg, Katz & Jaslow, LLP
                                      *Counsel for JM Holding Group, LLC, and*
                                      *Proposed Counsel for J. Mendel Inc.*

                                By:  */s/ Clifford A. Katz*
                                    Clifford A. Katz
                                    Andrew S. Muller
                                    475 Park Avenue South, 18th Fl.
                                    New York, New York 10016
                                    (212) 593-3000
                                    ckatz@platzerlaw.com